| | |
|---|---|
| In re | Case No. 17-30961-WRS |
| | Chapter 7 |
| TIMOTHY THOMAS McCALLAN, | |
| Debtor | |
| CARLY B. WILKINS, | |
| Plaintiff | Adv. Pro. No. 18-3091-WRS |
| v. | |
| ROBERT J. SANFILIPPO, ISLAND VIBES TOURS WORLDWIDE LLC, and ISLAND PUNCH BEVERAGE LLC, | |
| Defendants | |

**MEMORANDUM DECISION**

This Adversary Proceeding came before the Court on February 5, 2019, on the Motion to Dismiss filed by the Defendants. (Doc. 18). The Plaintiff was present by counsel Steve Olen and Lucy Tufts and the Defendants were present by counsel Wanda Borges. The Court took the motion under advisement. The motion is now fully briefed (Docs. 26, 27). For the reasons set forth below, the motion to dismiss is denied.

**I. Facts**

Timothy McCallan filed a petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on November 18, 2016, in the United States Bankruptcy Court for the Middle District of Florida, under Case No. 16-7524-CCJ. On March 30, 2017, this Court ordered Timothy

McCallan's case transferred from the Middle District of Florida to this Court (Case No. 17-30961, Docs. 61, 62, 63). Plaintiff Carly Wilkins was appointed Trustee (Case No. 17-30961, Doc. 64).

On November 15, 2018, Wilkins filed a ten-count complaint against Robert J. SanFilippo, Island Vibes Tours Worldwide, LLC, and Island Punch Beverage, LLC. (Doc. 1). The first 7 counts seek to set aside certain transfers as fraudulent conveyances under 11 U.S.C. § 544, 548, 550, and applicable state law. In Count 8, Wilkins seeks to set aside certain transfers as avoidable post-petition transfers pursuant to 11 U.S.C. § 549 and 550. In Count 9, Wilkins alleges that the Defendants are holding property of the estate and seeks its turnover pursuant to 11 U.S.C. § 542. In Count 10, Wilkins seeks an accounting from the Defendants for all property of the estate held by them and all property transferred by McCallan, which the Trustee contends is property of the estate.

Defendant, Robert SanFilippo, is an individual who resides in New York. Defendants Island Vibes Tours Worldwide, LLC, and Island Punch Beverage, LLC, are limited liability companies controlled by SanFilippo. On December 18, 2018, the Defendants moved to dismiss the complaint. (Doc. 18).[1]

## II. Law

---

[1] The Defendants have filed a number of documents in support of their argument that the corporations have been misnamed. (Doc. 27, Exhibits A-F). The proper way to solve this problem is to permit the Trustee to amend her complaint after she has had the opportunity to do discovery. Naturally, if a named defendant has nothing to do with the wrongdoing alleged by the Trustee, they can be dismissed later. The Court will not weigh the evidence at this phase of the proceedings.

The Court will divide its discussion of the issues here into three parts. In Part A, the Court will consider its subject-matter jurisdiction and its constitutional authority to decide enter a final order. In Part B, the Court will consider whether it has *in personam* jurisdiction over the Defendants. In Part C, the Court will consider whether the complaint states a claim for which relief may be granted.

### A. Subject-Matter Jurisdiction
### 1. History of Jurisdiction to Hear Bankruptcy Proceedings

Before delving into bankruptcy jurisdiction and the nature of bankruptcy courts, it may be profitable to review some history. In Article I, Section 8, Clause 4 of the Constitution of the United States, Congress is given power "to establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." Congress enacted several laws on the subject of bankruptcy in the Nineteenth Century, but it did not attempt to deal with bankruptcies in a comprehensive manner until it passed the Bankruptcy Act of 1898. The 1898 Act governed bankruptcies in the United States for the first three-quarters of the 20th Century. While most commentators considered the 1898 Act to be a successful attempt to establish workable bankruptcy laws, over time it became necessary to modernize the bankruptcy laws. In 1978, Congress enacted the current Bankruptcy Code, which is now in effect–albeit with numerous amendments since then.

One of the improvements of the 1978 Code over the 1898 Act was the establishment of Bankruptcy Courts with broad jurisdiction to hear and determine bankruptcy cases and proceedings which were closely related. Prior to that time, Bankruptcy Judges could only decide

matters which were in the Court's "summary" jurisdiction. "Plenary" matters could only be heard in district courts. It was though that the new jurisdictional scheme would streamline and modernize the process.

This state of affairs lasted only a few years, until the Supreme Court handed down *Northern Pipeline Construction Co., v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858 (1982). Northern Pipeline, a debtor, had filed suit seeking money damages from Marathon Pipeline for breach of contract. As any recovery from Marathon would fund an intended Chapter 11 Plan, the suit appeared to be well within the scope of the Bankruptcy Court's jurisdiction under the then extant jurisdictional grant. But that was not to be. The Supreme Court held in *Marathon Pipeline* that the jurisdictional grant to Bankruptcy Judges violated Article III of the Constitution. As Bankruptcy Judges are not appointed under Article III of the Constitution, they may not exercise "the judicial Power of the United States." *Marathon Pipeline* 458 U.S. 50, 60, 102 S.Ct. 2858, 2865. In light of *Marathon*, Congress had to recast its grant of jurisdiction over bankruptcy proceedings.

### 2. The Current Jurisdictional Scheme

In response to the Supreme Court's decision in *Marathon,* Congress enacted the present jurisdictional scheme. The Federal Court's jurisdiction over bankruptcy proceedings is defined by 28 U.S.C. § 1334(b), which provides as follows:

> the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

This provision vests all bankruptcy jurisdiction in the district courts.

4

The leading case on subject matter jurisdiction in this Circuit is *Continental Nat'l Bank of Miami v. Sanchez (In re Toledo)*, 170 F.3d 1340 (11th Cir. 1999). Subject matter jurisdiction over proceedings is divided into three categories: (1) arising under title 11; (2) arising in a case under title 11; or (3) related to cases under title 11. *Id*. at 1344. The first category, "arising under title 11" are those proceedings that "invok[e] a substantive right created by the Bankruptcy Code." *Id*. at 1344, *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). The second category, "arising in" involves administrative matters which are "matters that could arise only in bankruptcy." *Id.* at 1344. The third category, "related to" is defined as follows:

> The usual articulation of the test to determine whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id*. at 1345, *see also Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990).

Applying the Eleventh Circuit's jurisdictional test in *Toledo* to this case, it is apparent that the District Court has subject matter jurisdiction. Wilkins seeks to recover money and property which she alleges was fraudulently transferred from Timothy McCallan to the Defendants. This is a matter arising under title 11 as rights under Title 11 are invoked in the complaint. Wilkins seeks to set aside transfers pursuant to 11 U.S.C. §§ 544, 548, 549, 550, as well as turnover under § 542. Even if one were to argue that an action under § 544 requires a

5

state law cause of action, and for that reason, cannot be considered just a right under title 11, the "related to" test is met because any recovery will augment the estate and thereby benefit creditors.

The leading case from the Eleventh Circuit on fraudulent conveyances in bankruptcy courts is *Senior Transeastern Lenders v. Official Committee of Unsecured Creditors (In re TOUSA, Inc.)*, 680 F.3d 1298 (11th Cir. 2012). In *TOUSA*, the Eleventh Circuit took a deep dive into the intricacies of a complex fraudulent conveyance case which began in Bankruptcy Court in the Southern District of Florida, was appealed to the District Court, and ultimately to the Eleventh Circuit. The Eleventh Circuit concluded that a Bankruptcy Court could set aside certain transactions as fraudulent under the Bankruptcy Code. For all the litigation involved, the Bankruptcy Court's subject matter jurisdiction to hear a fraudulent conveyance case was never questioned.

Similarly, the United States Supreme Court recently considered whether a Bankruptcy Court could, consistent with Article III of the Constitution, hear a fraudulent conveyance case. *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 134 S.Ct. 2165 (2014). The issue there was whether a fraudulent conveyance case should be treated as a "core" or a "non- core" proceeding. The Court ultimately determined that it should be treated as non-core. *Executive Benefits* will be discussed in greater detail in Part II(A)(3) below.

The Defendants cite *Granfinanciera v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782 (1989), in support of their argument that this Court lacks subject-matter jurisdiction. (Doc. 18, pp. 4-5). The Supreme Court in *Granfinanciera* held that a party who had not filed a proof of claim in bankruptcy court was entitled to a jury trial on a fraudulent conveyance suit. *Id*. It says nothing

6

about a bankruptcy court's subject-matter jurisdiction. The Defendant's reliance on *Granfinanciera* for the proposition that this Court lacks subject-matter jurisdiction is misplaced.

Bankruptcy Courts routinely hear fraudulent conveyance cases. See *USAmeriBank v. Leopard (In re Leopard)*, No. 13-CV-2251, 2014 WL 2740320 (N.D. Ala. June 17, 2014)(discussing the question of who has standing to bring a fraudulent conveyance case in bankruptcy court, which necessarily establishes that the bankruptcy court has subject matter jurisdiction to hear the matter); *White v. Kubotek Corp.*, 487 B.R. 1, 6-8 (D. Mass. 2012)(concluding that the bankruptcy court had subject matter jurisdiction over fraudulent conveyance claims); *Burns v. Dennis (In re Southeastern Materials, Inc.)*, 467 B.R. 337, 345-46 (Bankr. M.D.N.C. 2012); *Andrews v. RBL, LLC (In re Vista Bella, Inc.)*, No. 12-00060, 2012 WL 3778956, *2 (Bankr. S.D. Ala. Aug. 30, 2012)(stating that *Stern v. Marhsall* did not divest the Bankruptcy Courts of subject-matter jurisdiction to hear fraudulent conveyance proceedings); *City Fire Equipment Co., Inc., v. Ansul Fire Protection Wormald U.S., Inc.*, 125 B.R. 645 (N.D. Ala. 1989)(holding that a bankruptcy court has jurisdiction to hear and determine all matters in a fraudulent conveyance case, up to the point of conducting a jury trial, which would have to be done in District Court). The Defendants' argument that this Court lacks subject matter jurisdiction flies in the face of a mountain of case law to the contrary.

### 3. This is a *Stern* Claim Which Will be Treated as Noncore

Having determined that the District Court has subject-matter jurisdiction to hear a fraudulent conveyance action pursuant to 28 U.S.C. § 1334(b), the Court must next determine whether the District Court may refer the matter here. Section 1334 vests all bankruptcy

7

jurisdiction in the District Courts. In turn, the District Courts may refer bankruptcy cases and all related proceedings to the Bankruptcy Courts. 28 U.S.C. § 157(a). If a matter is a core proceeding, the Bankruptcy Court may enter a final order, subject to appeal to the District Court. 28 U.S.C. § 157(b)(1). On the other hand, if the proceeding is not a core proceeding, the Bankruptcy Court is to make proposed findings of fact and conclusions of law and send them to the District Court, who then considers the matter *de novo*. 28 U.S.C. § 157(c)(1). A nonexclusive list of core proceedings is provided by statute. 28 U.S.C. § 157(b)(2).

The test for distinguishing core from noncore proceedings has been articulated by the Eleventh Circuit, as follows:

> If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding, for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in banrkruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) is is an "otherwise related" or non-core proceeding.

*In re Toledo*, 170 F.3d at 1348 (citing *Miller v. Kemira (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990); *see also Walker v. Comm. Cr. Corp.*, 192 B.R. 260, 266-67 (M.D. Ala. 1996)(finding that suit brought against lenders was within the District Court's § 1334(b) "related to" jurisdiction and that it was not a core proceeding).

Fraudulent conveyance actions are denominated by statute as core proceedings. 28 U.S.C. § 157(b)(2)(F)–which would appear to answer the question. However, in 2011, the Supreme Court handed down its decision in *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594

8

(2011), which held that a bankruptcy court had improperly decided a case as a core proceeding, in violation of Article III of the Constitution, notwithstanding the fact that the cause of action decided was denominated a core proceeding by statute. In *Stern*, a creditor filed a defamation claim against a debtor, contending that the liability was excepted from the debtor's discharge. The debtor filed a counterclaim against the creditor for tortuous interference of with her contractual rights. The debtor's counterclaim fell plainly within the definition of a core proceeding, as denominated by statute. 11 U.S.C. § 157(b)(2)(C)(denominating as core counterclaims filed by the estate against persons filing claims against the estate). *Id.* at 473, 2603. Nevertheless, the Supreme Court held in *Stern* that the Bankruptcy Court's exercise of core jurisdiction over the counterclaim violated Article III of the Constitution. The Supreme Court ruled in *Stern*, that 28 U.S.C. § 157(b)(2)(C) was unconstitutional because it delegated to bankruptcy judges, who are not appointed under Article III of the constitution, powers that can only be exercised by an Article III judge.

*Stern* raised, but did not answer, two questions. First, whether there were any other kinds of claims which were, like *Stern*, defined as core by statute but beyond the powers of a judge not appointed under Article III of the Constitution. Second, when a claim is identified as a *Stern* claim, what was to be done with it? That is, can a bankruptcy judge treat it as a noncore proceeding and make proposed findings of fact and conclusions of law, or must it abstain completely, leaving the claim for determination in district court in the first instance?

The Supreme Court answered to the second of these two questions, without answering the first, in the context of a fraudulent conveyance action. *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 134 S.Ct. 2165 (2014). The Supreme Court stated that "we assume without

9

deciding, that the fraudulent conveyance claims in this care are *Stern* claims." *Id*. at 573 U.S. 37, 134 S.Ct. 2174. Having determined that a fraudulent conveyance claim is a *Stern* claim, the Supreme Court in *Executive Benefits* determined that a bankruptcy court could treat the matter as a noncore proceeding without violating Article III of the Constitution. In light of the Supreme Court's decision in *Stern*, this Court will treat this adversary proceeding as noncore. By that, it is meant that the Court will hear the matter but not enter a final order. The Court concludes that it has subject matter jurisdiction and it will hear this as a "noncore" proceeding.

### B. This Court has *In Personnam* Jurisdiction Over the Defendants

Having determined that this Court has subject matter jurisdiction to hear this Adversary Proceeding, the next question is whether this Court has jurisdiction over the Defendants. "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *Republic of Panama v. BCCI Holdings (Luxemborg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997). "The summons and complaint and all other process except a subpoena may be served anywhere in the United States." Rule 7004(d), Fed. R. Bankr. P. For this reason, this Court has *in personam* jurisdiction over the Defendants. In *BCCI,* the Eleventh Circuit expressly rejected the argument made here by the Defendants that "minimum contacts" analysis applies at a state level.

> A defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis. As a practical matter state lines cannot provide an accurate measure of the burdens that would be imposed on a defendant by requiring him to defend an action in a particular forum. There is nothing inherently burdensome about crossing a state line. Thus, determining whether litigation imposes

10

> an undue burden on a litigant cannot be determined by evaluating
> only a defendant's contacts with the forum state. A court must
> therefore examine a defendant's aggregate contacts with the nation
> as a whole rather than his contacts with the forum state in
> conducting the Fifth Amendment analysis.

*Id*. at 946-47 (citations omitted).

The Eleventh Circuit stated that only in "highly unusual cases will inconvenience rise to a level of constitutional concern." *Id.* at 947. The Defendants make no such showing here. Because the Defendants have sufficient minimum contacts with the United States and because they make no showing of inconvenience which rises to a constitutional dimension, the Court finds that it has *in personam* jurisdiction over the Defendants.

The Defendants cite this Court's decision in *Gentry Steel Fabrication, Inc. v. Howard S. Wright Construction Co. (In re Gentry Steel Fabrication, Inc.)*, 325 B.R. 311 (Bankr. M.D. Ala. 2005)(Williams, B.J.), in support of their motion. *Gentry Steel* was a Chapter 11 bankruptcy case where a debtor was attempting to collect a contractual debt. Steel had been provided by the Debtor for two construction projects in California. None of the business activities between Gentry Steel and the Defendant took place in Alabama. The Court in *Gentry Steel* found that it had *in personam* jurisdiction over the Defendant. Moreover, it considered whether the exercise of jurisdiction over the Defendants would violate the constitution and found that it would not. *Id*. at 317. Rather, the Court in *Gentry Steel* found that in the interests of justice and for the convenience of the parties, the case should be transferred to California pursuant to 28 U.S.C. § 1412. Thus, *Gentry Steel* undercuts rather than supports the Defendant's argument that this Court does not have *in personam* jurisdiction over the Defendants.

11

Bankruptcy Courts routinely exercise *in personam* jurisdiction over out-of-state parties so long as they have minimum contacts with the United States, rejecting arguments that there is no *in personam* jurisdiction absent a showing of minimum contacts with the forum state. *Bakst v. Lester (In re Amelung)*, No. 09-1719, 2010 WL 1417742, *8 (Bankr. S.D. Fla. Apr. 7, 2010); *Airport Blvd. Apts., Ltd. v. NE 40 Partners, Ltd. Partnership (In re NE 40 Partners, LTD)*, 411 B.R. 352, 359 (Bankr. S.D. Tex. 2009); *Tabas v. Fordberry PLC (In re Tirex Int'l, Inc.),* 395 B.R. 182, 188 (Bankr. S.D. Fla. 2008); *TJN, Inc. v. Superior Container Corp. (In re TJN, Inc.)*, 207 B.R. 502 (Bankr. D.S.C. 1996); *Charter Oil Co. v. Cotton (In re Charter Oil Co.)*, 189 B.R. 527 (Bankr. M.D. Fla. 1995); *K. O. Trucking Co., Inc. v. Ground Control, Inc. (In re K.O. Trucking Co., Inc.)*, 99 B.R. 78, 79-80 (N.D. Ala. 1988); *see also*, *In re Marathe*, 459 B.R. 850, (Bankr. M.D. Fla. 2011)(holding that a Bankruptcy Court in Florida had *in personam* jurisdiction over an individual in New York and could compel her to attend a Rule 2004 exam in Florida).

In the case at bar, this Court finds that it has *in personam* jurisdiction over the Defendants. First, they all have minimum contacts with the United States. Second, they have made no showing of inconvenience which would rise to a constitutional level within the meaning of *BCCI*. The Defendants' argument, that *in personam* jurisdiction does not exist because of a lack of minimum contacts with the State of Alabama, is rejected because that is not the proper standard.

## C. The Complaint States a Claim for Which Relief May be Granted

The Defendants move to dismiss the complaint on the grounds that it fails to state a claim for which relief may be granted. The Defendants argue two grounds in favor of their motion to dismiss. First, they contend that because the bulk of the transfers alleged in the complaint were made through various corporations, and not directly from Timothy McCallan, they are not fraudulent. Second, the Defendants contend that the Trustee's complaint is wholly dependant upon allegations made by Timothy McCallan and because the Court has held, on any number of occasions, that McCallan is not credible, that the complaint should fail. (Doc. 18, pp. 9-11).

"A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqubal*, 550 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). The difficulty with the Defendants' motion to dismiss is that they fail to accept, as true, the allegations contained in the complaint. The Trustee alleges transfers from McCallan to the Defendants were made for inadequate consideration.

The Defendants allege that none of the corporations named in the complaint, as transferors of funds or property to the Defendant, have anything to do with them. (Doc. 18, pp. 9-10). This is a mere denial of some of the allegations of the complaint. It is axiomatic that, for purposes of ruling on a Rule 12(b)(6) motion that the Court accept as true, the facts alleged. The Trustee alleges that transfers from certain corporations are tantamount to transfers from McCallan himself. Indeed, a recurring theme throughout these proceedings is that McCallan acts through a number of instrumentalities, corporations, and individuals. To be sure, the Trustee will be called upon to prove her allegations once this comes to trial. When considering a motion to

13

dismiss, the Court accepts as true all of the well pleaded factual allegations of the complaint. Counts 1 to 7 adequately allege fraudulent conveyances. Count 8 alleges a voidable post-petition transfer. The Defendants make no argument that Count 8 is count is insufficient and the Court finds that the allegations are sufficient. Counts 9 and 10, seeking turnover (11 U.S.C. § 542) and an accounting, are in the nature of remedies rather than independent causes of action.

The Defendants argue in their Reply memoranda that this Adversary Proceeding should be dismissed because some of the transfers alleged by the Trustee were beyond the statute of limitations. (Doc. 27, pp. 6-7). As that argument was not raised in the Defendants opening brief the Court will not consider it here.

### III. Conclusion

This Court has subject matter jurisdiction to hear the complaint as these are either proceedings "arising under title 11" or "related to" proceedings under title 11. The claims alleged by the Trustee fall within the scope of 28 U.S.C. § 1334(b). The Court has jurisdiction over the person of each of the Defendants because they were served with process under Bankruptcy Rule 7004(d). This rule allows for nationwide service of process. It is undisputed that the Defendants have contact with the United States. Moreover, they make no credible argument of a constitutional basis upon which jurisdiction would fail. Their argument–that they lack sufficient minimum contacts with the State of Alabama–is without merit. The Defendants argument that the complaint fails to state a claim for which relief may be granted is without merit because they fail to assume the truth of facts alleged in the complaint. The Defendants may not

Case 18-03091    Doc 28    Filed 03/08/19    Entered 03/08/19 16:31:26    Desc Main
Document      Page 14 of 15

"wish away" the Trustee's case and then proclaim victory. The Court will deny the Defendants' Motion to Dismiss by way of a separate order.

Done this 8th day of March, 2019.

/s/ William R. Sawyer

United States Bankruptcy Judge

c: Steve Olen, Attorney for Plaintiff
   Lucy E. Tufts, Attorney for Plaintiff
   Wanda Borges, Attorney for Defendants
   Carly B. Wilkins, Plaintiff